IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CHARLES D. DORAZIO, | ) | Case No. 1:16CV2187 |
| | ) | |
| Plaintiff, | ) | JUDGE CHRISTOPHER A. BOYKO |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | THOMAS M. PARKER |
| CHARLES E. COULSON, ET AL., | ) | |
| | ) | |
| Defendants. | ) | **REPORT & RECOMMENDATION** |
| | ) | |

## I.  Introduction

Plaintiff and his former wife divorced in Cuyahoga County, Ohio in 2002.  The couple had three children, two of whom (B.D. and Br.D.) were twins born in August 2000.  The mother, designated the co-custodial parent, moved to New York with the children in 2002.  In 2005 plaintiff and his former wife obtained a modified order addressing custody and visitation from the Jefferson County Family Court in New York.  The Cuyahoga County Court of Common Pleas also entered orders relating to custody and visitation after 2005.

Plaintiff sued defendants – prosecutors and sheriffs – because they worked together to execute a September 2, 2014 writ of habeas corpus issued by a Jefferson County, New York Family Court judge that required plaintiff to surrender custody of B.D. to his ex-wife.  Although plaintiff was seeking to modify his shared parenting plan, to allow B.D. to reside with him, an agreement had not been reached by the time the child was to have been returned to his mother. Plaintiff returned B.D.'s twin sister to his ex-wife on August 17, 2014 but kept B.D. with him,

allegedly to be evaluated by a psychologist. Plaintiff's ex-wife sought a writ of habeas corpus for the return of B.D. on August 25, 2014. When that writ did not execute, a replacement writ was issued on September 2, 2014 and executed the following day. Plaintiff seeks damages from defendants, claiming that they deprived him of his constitutional rights when he was not permitted to parent B.D. for an indeterminate period of time after the child was returned to his mother.

This matter is before the court on defendants' October 3, 2016 motion to dismiss, pursuant to an order of reference issued by Judge Christopher A. Boyko. The undersigned is required to file a report containing proposed findings and recommendations for disposition of any case-dispositive motions.

The undersigned RECOMMENDS that defendants' motion to dismiss be GRANTED and that the action be DISMISSED.

## II.     Standard of Review

Defendants move under Fed. R. Civ. P. 12(b)(6), asserting that plaintiff has failed to state a claim upon which relief can be granted. Although a complaint attacked by a Rule 12(b)(6) motion to dismiss need not contain detailed factual allegations to survive, *Bell Atlantic Corp. v. Twombly,* 550 U.S.544, 555, 127 S.Ct. 1955, 167 Led. 2d 929 (2007); *Sanjuan v. American Bd. of Psychiatry and Neurology, Inc.,* 40 F.3d 247, 251 (C.A.7 1994), a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. *Twombly,* 550 U.S. at 555; *See also Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986) (on a

motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation").

The Supreme Court further explained the pleading requirements in *Ashcroft v. Iqbal,* 566 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

> [T]he pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation.  A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do."  Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement.  To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."  A claim has facial plausibility when the plaintiff alleges factual content that allows the court to draw the reasonable  inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a "probability requirement" but it asks more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'

(internal citations omitted) *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed. 2d 868 (2009).

In ruling on a motion to dismiss, a district court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *DirecTv, Inc., v. Treesh,* 487 F.3d 471, 476 (6th Cir. 2007).  The court may consider:  (1) any documents attached to, incorporated by, or referred to in the pleadings; (2) documents attached to the motion to dismiss that are referred to in the complaint and are central to the plaintiff's allegations, even if not explicitly incorporated by reference; (3) public records; and (4) matters of which the court may take judicial notice. *Whittiker v. Deutsche Bank Nat'l Trust Co.,* 605 F.Supp.2d 914, 924-925 (N.D. Ohio 2009).  The defendant has the burden to show that the plaintiff has failed to state a claim, *DirecTv, Inc. ,* 487 F.3d at 476 (citing *Carver v. Bunch,* 946 F.2d 451, 454, 455 (6th Cir. 1991)).

3

III.    **Facts Accepted as True**

The numbered allegations in the complaint, which are presumed to be true for the

purposes of defendants' Rule 12(b)(6) motion, are listed below.

11.  The marriage of Plaintiff Dorazio (hereinafter Father) and the mother
(hereinafter Mother) of the minor  child B.D. was terminated by a Judgment
Entry of Divorce and Final Shared Parenting Decree (hereinafter the Decree)
dated 6 November 2002 in the Cuyahoga County Court of Common Pleas,
Domestic Relations Division, Case No. DR 01 283656.

12.  That decree designated both Father and Mother as legal custodians of the
parties' three children, including B.D., whose date of birth is 8.07.2000.

13.  Since the date of the Decree, B.D. and his twin sister (hereinafter Br.D.) had
resided in New York with Mother; the oldest sibling had relocated to reside
with Father in the City of Eastlake, Lake County, Ohio.  The minor child
B.D. is now a resident of the city of Eastlake, Lake County, Ohio, having
relocated in June of 2016, with Plaintiff designated the residential parent for
school purposes.

14.  Before the commencement of the children's 2014 summer parenting time
with Father, B.D. expressed his desire to reside in Father's home. Through
counsel, Father proposed that change to Mother and offered a revised shared
parenting plan for her review.

15.  After Mother expressed concern that Father might be influencing B.D., Father
proposed through counsel that an experienced, impartial psychologist be
retained to interview the children and the parties and evaluate B.D.'s desires
and his status.  Upon agreement of the parties, clinical psychologist Michael
Esson PhD was retained to perform those services and Mother was made
aware of the need to retain Brandon in Ohio for a period of time.

16.  Having notified Mother that their daughter, Br.D., had met with Dr. Esson
and that B.D. and his older brother were to meet with him within about a
week, Father returned Br.D. to Mother's possession on 17 August 2014.

17.  After Dr. Esson's 23 August interviews with the parties' sons and subsequent
conversations with Mother and Father, notwithstanding the parties'
agreement Mother approached the Family Court of Jefferson County, New
York for the purpose of obtaining a writ of habeas corpus for the return of
B.D. to her.  She did so despite having been notified of the fact that the
courts of the State of New York patently and unambiguously lacked subject
matter jurisdiction.  In addition, under New York law, specifically the New
York version of the Uniform Child Custody Jurisdiction and Enforcement

4

Act (the UCCJEA) and New York's statute dealing with writs of habeas corpus for minors, the Jefferson County Family Court lacked subject matter jurisdiction over the persons of the Dorazio children and lacked subject matter jurisdiction to issue a writ of habeas corpus insofar as B.D. was not then to be found in the State of New York.

18.  Upon Mother's presentation of the alleged New York writ of habeas corpus issued on 26 August 2014 by the Honorable Peter A. Schwerzmann of the Jefferson County, New York Family Court, Defendant Germano telephoned counsel for Plaintiff Charles Dorazio and stated that the writ of habeas corpus would not be executed or enforced. During that phone call, counsel for Plaintiff stressed to Defendant Germano that the courts of the State of New York patently and unambiguously lacked subject matter jurisdiction over the issue of parenting B.D. by reason of Ohio's exclusive, continuing jurisdiction under both New York's and Ohio's version of UCCJEA and the Parental Kidnapping Prevention Act (hereinafter PKPA).

19.  On or about 2 September 2014, Mother secured a second alleged writ of habeas corpus, incorporating changes requested and directed by Defendant Germano and Defendant Coulson, requiring the transfer of possession of the minor child B.D. from Father to Mother.  This writ was again issued by the Family Court of Jefferson County, New York despite the fact that said court continued to patently and unambiguously lack subject matter jurisdiction over parenting issues and lacked jurisdiction to issue a writ of habeas corpus as B.D. was not then in the State of New York, said writ was not registered in the State of Ohio, in compliance with O.R.C. 3127.

20.  Upon information and belief, before the issuance of the second alleged writ of habeas corpus Defendant Germano communicated directly with the Judge Schwerzmann of the Jefferson County, New York Family Court, instructing him on the language she and Defendant Coulson wanted included in the second writ of habeas corpus, none of which language resulted in a registration of the New York writ in Ohio.  Defendant Germano, upon information and belief, had discussions with both Defendant Dunlap and Defendant Reed for the purpose of planning the execution of the allegedly corrected but still jurisdictionally void writ.

21.  The Defendants were aware of and understood the requirements of Ohio Revised Code, Section 3127.35, which provides that foreign custody decree, before it can be enforced, must be registered in the county in which the child is found, that being Lake County, Ohio and/or in the county where the action arose, that being Cuyahoga County, Ohio in Case No. DR 01 283656.

22.  On the evening of 3 September 2014, Defendant Reed and other officers of the Lake County Sheriff's Department, upon information and belief under the orders of Defendant Dunlap, appeared at the outside of Plaintiff Charles

5

Dorazio's home, as did officers of the Eastlake Police Department, Defendant Reed, for himself and pursuant to Defendant Dunlap's orders, demanded the transfer of physical custody of B.D. to Defendant Reed, by reason of the void writ. At that time, Defendant Dunlap and Defendant Reed knew, or should have known, that the writ was void and that had the writ been sought to be registered, the fact that it was void would have disclosed.

23. At the point Defendant Dunlap and Defendant Reed appeared to take physical custody of B.D., Plaintiff called his counsel, who then spoke with Defendant Reed. Defendant informed counsel that he was in possession of a 'court order' for the return of B.D. to Mother and, upon questioning by counsel, stated that the order was registered in Lake County. Thereafter, Plaintiff returned the child to Defendant Reed. In fact, the writ was not registered in any county in the State of Ohio and Defendant Reed's prevarication was intended to mislead Plaintiff and his counsel in furtherance of the conspiracy with Defendant Dunlap and Defendant Germano to deprive Plaintiff of his Constitutional rights to the care, custody and control of his minor child.

24. By reason of Defendants' acts, actions and undertakings regarding his son, B.D., Plaintiff Charles Dorazio was deprived of the fundamental right to parent to raise his child and his fundamental liberty interest in the care, custody, and management of his child by reason of Defendants' failure to proceed according to orders of the State of Ohio or valid orders duly registered in Ohio according to statute.

## IV. Parties' Arguments

Defendants assert that the case must be dismissed because plaintiff failed to allege facts which, if true, support a plausible claim for relief. Specifically, defendants contend that plaintiff's basic allegations – that the Jefferson County Family Court in New York lacked jurisdiction to issue a writ of habeas corpus for the return of B.D. and that the writ was invalid because it was not registered with the clerk of court in Ohio – don't provide the basis for a claim for § 1983 relief because no substantive or procedural due process or other constitutional rights were violated. In addition, defendants assert that Counts 3 and 4 of the complaint do not allege sufficient facts to support § 1983 claims for failure to train subordinates. Defendants generally contend that the complaint allegations are inadequate because they are mere conclusions of law and not sufficiently detailed factually.

Beyond the contended insufficiency of the factual allegations in the complaint, defendants also contend:

1.      That the prosecutor defendants are absolutely immune from liability because they were engaged in the performance of prosecutorial functions and advocating on behalf of the state for the return of the minor child.

2.      That all defendants are absolutely immune under a theory of quasi-judicial immunity.  They assert they were engaged in the execution of the writ issued by the New York court as they were mandated to do by Ohio Revised Code §§ 311.07, 311.08, 3127.45, 3127.46, 309.08 and 309.09.  They assert that the immunity extended to the New York judge by law is imputed to them.  Moreover, they contend they were under no obligation to make an independent determination of whether the New York court had jurisdiction to issue the writ of habeas corpus, and they dispute that Ohio law requires the registration of the writ in Ohio before it could properly be executed.

3.      That they are immune from liability under the doctrine of qualified immunity. They contend plaintiff's constitutional rights were not violated by the enforcement of the New York writ.

4.      Finally, defendants suggest that plaintiff may have filed the action beyond the two year statute of limitations.

Plaintiff responded in opposition to the motion to dismiss.  Plaintiff asserts that his factual allegations, involving issues of court process and procedure were sufficient to put defendants on notice of what the claims were.  Plaintiff asserts that he made allegations about the existence of a 2002 Ohio divorce decree in which parental rights and responsibilities were determined.  He asserts that he made specific allegations that he and his former wife were

7

engaged in discussion and actions that could have led to a custody modification for B.D.  He points out that his complaint specifically alleged that the Jefferson County Family Court lacked jurisdiction to issue a writ of habeas corpus and that the writ was never registered in Ohio as, he contends, was required by law.  He argues that his allegations that defendants were not entitled to rely upon the validity of an order of a court in New York without determining whether that court had proper and lawful authority to issue the writ were adequate.  Plaintiff contends his complaint was more than adequate to survive a motion to dismiss.

In regard to defendants' immunity contentions, plaintiff argues:

1.      No absolute prosecutorial immunity attaches because the prosecutors were not involved in bringing a suit and were not acting as advocates for the state.

2.      No absolute quasi-judicial immunity attaches because the New York judge acted in clear absence of jurisdiction and was not himself, therefore, immune from liability.  Absent judicial immunity, plaintiff contends there can be no quasi-judicial immunity for defendants.  Furthermore, plaintiff asserts that defendants not only omitted to determine whether the writ of habeas corpus was issued by a lawful and proper authority they also failed to note that the writ was not registered with an Ohio clerk of court as, he urges, is required by law.

3.      No qualified immunity attaches because plaintiff has adequately alleged a violation of his fundamental constitutional right to parent his child free from state interference, and he has alleged he was deprived of this right without due process of law.

4.      Finally, plaintiff asserts that the court should defer ruling on the motion to dismiss the failure to train claims until discovery is complete.  And he asserts that the statute of limitations argument is not proper in the context of  a Rule 12(b)(6) motion.

8

## V.    Law & Analysis

### A.    Deprivation of a Constitutional Right

At the outset of his complaint, plaintiff announces that this is a civil action under 42
U.S.C. § 1983. A claim under 42 U.S.C. § 1983 has two elements: "'(1) the defendant must be
acting under the color of state law, and (2) the offending conduct must deprive the plaintiff of
rights secured by federal law.'" *Lambert v. Hartman*, 517 F.3d 433, 439 (6th Cir. 2008) (quoting
*Bloch v. Ribar*, 156 F.3d 673, 677 (6th Cir. 1998)); *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S.
40, 49-50, 119 S. Ct. 977, 143 L.Ed. 2d 130 (1999). If the allegations in a complaint fail to
allege the abridgement of a recognized federal constitutional right or a right otherwise secured by
federal law, the complaint must be dismissed. As noted above, defendants argue that plaintiff
has not alleged a sufficient factual predicate for a constitutional deprivation claim.

Plaintiff alleges that he was deprived of his "fundamental right . . . to raise his child and
his fundamental liberty interest in the care, custody, and management of his child . . . ." In
Count One, he alleges that defendants violated his rights when they physically removed his child
from his custody under color of state law. Count Two alleges that the defendants worked in
concert with each other to deprive him of rights secured by the United States Constitution. In
Count Three, he alleges that Defendant Prosecutor Coulson's negligent training and supervision
of Defendant Assistant Prosecutor Germano resulted in the deprivation of his rights; and in
Count Four he alleges that Defendant Sheriff Dunlap's negligent training and supervision of
Defendant Deputy Sheriff Reed resulted in the deprivation of his rights.

The core of each of plaintiff's claims is the allegation that he was deprived of the
fundamental constitutional right to raise his child. Plaintiff cites *Troxel v. Granville,* 530 U.S.
57, 120 S. Ct. 2054, 147 L.Ed.2d 49 (2000), in support of this assertion. In *Troxel,* the U.S.

Supreme Court confirmed the existence of a fundamental right of parents to raise their children.

Justice O'Connor's plurality opinion stated:

> The liberty interest at issue in this case -- the interest of parents in the care, custody, and control of their children -- is perhaps the oldest of the fundamental liberty interests recognized by this Court.  More than 75 years ago, in *Meyer v. Nebraska*, 262 U.S. 390, 399, 401, 67 L. Ed. 1042, 43 S. Ct. 625 (1923), we held that the "liberty" protected by the Due Process Clause includes the right of parents to "establish a home and bring up children" and "to control the education of their own."  Two years later, in *Pierce v. Society of Sisters*, 268 U.S. 510, 534-535, 69 L. Ed. 1070, 45 S. Ct. 571 (1925), we again held that the "liberty of parents and guardians" includes the right "to direct the upbringing and education of children under their control."  We explained in *Pierce* that "the child is not the mere creature of the State; those who nurture him and direct his destiny have the right, coupled with the high duty, to recognize and prepare him for additional obligations." 268 U.S. at 535.  We returned to the subject in *Prince v. Massachusetts*, 321 U.S. 158, 88 L. Ed. 645, 64 S. Ct. 438 (1944), and again confirmed that there is a constitutional dimension to the right of parents to direct the upbringing of their children."  It is cardinal with us that the custody, care and nurture of the child reside first in the parents, whose primary function and freedom include preparation for obligations the state can neither supply nor hinder." 321 U.S. at 166.
>
> In subsequent cases also, we have recognized the fundamental right of parents to make decisions concerning the care, custody, and control of their children. See, e.g., *Stanley v. Illinois,* 405 U.S. 645, 651, 31 L. Ed. 2d 551, 92 S. Ct. 1208 (1972) ("It is plain that the interest of a parent in the companionship, care, custody, and management of his or her children 'comes to this Court with a momentum for respect lacking when appeal is made to liberties which derive merely from shifting economic arrangements'" (citation omitted)); *Wisconsin v. Yoder,* 406 U.S. 205, 232, 32 L. Ed. 2d 15, 92 S. Ct. 1526 (1972) ("The history and culture of Western civilization reflect a strong tradition of parental concern for the nurture and upbringing of their children.  This primary role of the parents in the upbringing of their children is now established beyond debate as an enduring American tradition"); *Quilloin v. Walcott,* 434 U.S. 246, 255, 54 L. Ed. 2d 511, 98 S. Ct. 549 (1978) ("We have recognized on numerous occasions that the relationship between parent and child is constitutionally protected"); *Parham v. J. R.,* 442 U.S. 584, 602, 61 L. Ed. 2d 101, 99 S. Ct. 2493 (1979) ("Our jurisprudence historically has reflected Western civilization concepts of the family as a unit with broad parental authority over minor children.  Our cases have consistently followed that course"); *Santosky v. Kramer,* 455 U.S. 745, 753, 71 L. Ed. 2d 599, 102 S. Ct. 1388 (1982) (discussing "the fundamental liberty interest of natural parents in the care, custody, and management of their child"); *Glucksberg*, supra, at 720 ("In a long line of cases, we have held that, in addition to the specific freedoms protected by the Bill of Rights, the 'liberty' specially

10

protected by the Due Process Clause includes the right . . . to direct the education and upbringing of one's children" (citing *Meyer* and *Pierce*)). In light of this extensive precedent, it cannot now be doubted that the Due Process Clause of the Fourteenth Amendment protects the fundamental right of parents to make decisions concerning the care, custody, and control of their children.

*Id.* at 65. Each of the concurring and dissenting opinions in *Troxel* also recognized the fundamental character of a parent's right to exercise control over his children.

Courts have also recognized that the substantive due process rights of parents are implicated when the government attempts to interfere with the custody of their children. See *Santosky v. Kramer,* 455 U.S. 745, 102 S. Ct. 1388, 71 L. Ed. 2d 599, 1982 U.S. LEXIS 89, 50 U.S.L.W. 4333 (U.S. 1982). This interest, however, must be balanced against the state's interest in protecting children suspected of being abused. See, e.g., *Croft v. Westmoreland County Children & Youth Serv.,* 103 F.3d 1123, 1125 (3d Cir. 1997); *Millspaugh v. County Dept. of Public Welfare*, 937 F.2d 1172, 1175-77 (7th Cir. 1991). Indeed, there are numerous § 1983 cases brought by parents after their children were removed by government actors dealing with child abuse allegations. See e.g. *Kovacic v. Cuyahoga County Dep't of Children & Family Servs.,* 809 F. Supp.2d 754 (N. D. Ohio 2011, *aff'd.* 724 F.3d 687 6th Cir. 2013)(denial of summary judgment on absolute immunity and qualified immunity grounds upheld); *Croft v. Westmoreland County Children & Youth Serv.,* 103 F.3d 1123, 1125 (3d Cir. 1997). Such cases require the balancing of the rights of a parent against the responsibility of the state to protect a child. This, however, is not one of those cases. Instead, this case requires the court to decide whether one parent can maintain a §1983 claim when governmental officials acted under color of state law to enforce the parental rights of other parent.

According to plaintiff, in the summer of 2014, he sought to modify a custody agreement with his former spouse. Plaintiff and B.D.'s mother were divorced in November 2002 in

Cuyahoga County, Ohio.[1]  A Journal Entry and Opinion of the Ohio Court of Appeals states: "In 2004, Mother filed pleadings with a New York court seeking to modify custody and visitation. Plaintiff and mother participated in hearings, and the New York court issued orders relating to custody and visitation of the three children."[2]

Plaintiff's complaint asserts that the custody change was desired because "before the commencement of the children's 2014 summer parenting time with Father, B.D. expressed his desire to reside in Father's home."  Plaintiff, through counsel, proposed a revised parenting plan. It does not appear that the mother agreed to this revised parenting plan at any time prior to seeking a writ of habeas corpus.[3]  Paragraph 15 of the complaint alleges that "Mother expressed concern that Father might be influencing B.D."  Plaintiff then proposed, through counsel, that B.D meet with a psychologist to evaluate B.D.'s desires.  Plaintiff alleges that Mother was "made aware" of the need for B.D. to stay longer in Ohio.  Plaintiff states that Mother was "notified" that B.D. would be meeting with the psychologist about a week after plaintiff returned B.D.'s twin sister to Mother.  After the psychologist evaluation, Mother and Father had subsequent conversations (the details of which are not set forth in the complaint), but B.D. had still not been returned to his Mother.  The parenting agreement apparently had not been formally revised by the time Mother sought the writ in Jefferson County, where she and B.D. had lived since 2002.  (See ¶ 17 of plaintiff's complaint.)  Even when all of plaintiff's allegations are assumed to be true, the plain implication is that plaintiff had kept B.D. beyond the limits of the

---

[1] Complaint ¶ 11, ECF Doc. No. 1.
[2] Plaintiff refers to the case for which this judgment entry was issued in paragraph 21 of his complaint. The appellate opinion was issued on February 25, 2016.
[3] Paragraph 17 of the complaint includes the following ambiguous clause: "[N]otwithstanding the parties' agreement Mother approached the Family Court of Jefferson County, New York for the purpose of obtaining a writ of habeas corpus . . . ."  The statement doesn't allege what the agreement was supposed to have been.  No other mention is made of an agreement, and the allegations regarding the mother's petition for a writ, even when construed in a light most favorable to plaintiff, can only be construed to mean that she didn't think she had made an agreement.

then-existing parenting plan; and it appears likely (although not expressly alleged) that the terms

of the formal agreement would have required B.D.'s return to his mother by the time she

approached the New York court for the writ of habeas corpus.

As noted above, there is a significant distinction between what happened in this case and

cases involving a state actor who is sued after removing a child from a home for suspected abuse.

The three circuit court decisions discussed below persuasively indicate how alleged § 1983

violations arising from the enforcement of child custody orders should be analyzed.

In *Zakrzewski v. Fox,* 87 F.3d 1011, 1996 U.S. App. LEXIS 15766 (8th Cir., 1996), a

father brought a § 1983 action against law enforcement officials who secured the return of a

minor child to the father's former spouse.  Plaintiff alleged that his liberty interest in parenting

his son was violated when his visitation period was cut short.  The Eighth Circuit determined that

the father had not been deprived of any right secured by the Constitution and/or laws of the

United States.  Though recognizing a parent's liberty interest in the care, custody and

management of his children, the court reasoned that the father's liberty interest had already been

substantially reduced by the terms of his divorce decree and Nebraska law.  The court ruled that

the father's substantive due process claim failed because the facts didn't prove that defendants

abused their power or infringed upon the father's liberty interest in a manner that shocked the

conscience. The court also held that the procedural due process claim failed because the father

neither showed that he was deprived of his liberty interest nor that his state remedies were

inadequate to address his concerns.  Because the court found no constitutional deprivation,

plaintiff's § 1983 claims necessarily failed.

In *Wise v. Bravo,* 666 F.2d 1328, (10th Cir. 1981), the Tenth Circuit affirmed the

dismissal of a father's § 1983 claims after the police intervened to return custody of his minor

daughter to plaintiff's ex-wife.  Despite the father's constitutionally protected relationship with his child, the Tenth Circuit held that there was no substantive federal constitutional, statutory or common law that governs family relationships, including matters of custody and visitation rights between parents and children.  The court determined that the subject of family law and domestic relations was uniquely within the province of state law.  *Id.*  at 1332.  The court affirmed the dismissal of Wise's § 1983 action because he had failed to allege or demonstrate that he suffered any cognizable deprivation of a constitutional right.  The court ruled that any deprivation of Wise's visitation rights was so insubstantial in duration and effect that no constitutional impact could be found.

In *Brittain v. Hansen,* 451 F.3d 982, 2006 U.S. App. LEXIS 15572 (9th Cir. 2006), a law enforcement officer intervened in a dispute over a mother's right to a week of visitation with her child.  The officer interpreted the parties' custody order and concluded that the child should be returned to his father, the custodial parent.  Defendant argued that he was qualifiedly immune from § 1983 liability.  To determine whether the law enforcement officer enjoyed a qualified immunity, the Ninth Circuit used the two-question approach set forth in *Saucier v. Katz,* 533 U.S. 194, 200-201 (2001): [4]   1) whether the facts alleged, taken in a light most favorable to the person claiming injury, showed the violation of a constitutional right, and 2) whether that constitutional right was clearly established.  If no violation of a constitutional right could be found, no further inquiry would be necessary.  *Saucier,* 533 U.S. at 201.  If a constitutional violation *has* occurred, the court then considers whether that right was 'clearly established' such

---

[4] In *Pearson v. Callahan,* 555 U.S. 223, 129 S.Ct. 808, 172 L.Ed.2d 565, the Supreme Court  held that the *Saucier* procedure was inflexible and that courts were no longer required to follow the strict order of analysis announced in *Saucier.*  Nonetheless, the court noted that the *Saucier* protocol was often beneficial and that courts could continue to employ this approach if so desired.  *Saucier,* 555 U.S. at 236.

that "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 202.

Though it found the non-custodial parent had a liberty interest in her court-ordered visitation rights, the Ninth Circuit held that the deprivation of that interest on the facts alleged did not rise to the level of a federal constitutional violation. *Brittain,* 451 F.3d at 994.  And it concluded that the mother's substantive due process claim failed because there was nothing conscience-shocking about the officer's enforcement of the custody order.  The court disposed of the mother's procedural due process argument after applying the balancing test announced in *Mathews v. Eldridge*, 424 U.S. 319, 349, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), concluding that no pre-deprivation hearing was required before the mother could be deprived of a week of visitation.  The available state procedures were deemed sufficient to satisfy the requirements of due process.  *Brittain,* 451 F.3d at 1002.  In summary, the Ninth Circuit determined that the mother had failed to allege a sufficient deprivation of liberty to implicate her constitutional rights, and it concluded that the actions of the officer who had removed Brittain's child were not conscience-shocking.  The court concluded that plaintiff had failed to state a substantive or procedural due process claim, and it ruled that the officer was entitled to a qualified immunity from her § 1983 action.

In Mr. Dorazio's case, plaintiff has asserted four different claims.  Each involves an alleged deprivation of plaintiff's constitutional right to the care, custody, and management of his child.  According to plaintiff, defendants deprived him of an unspecified amount of visitation time with his son when they enforced the September 2, 2014 writ of habeas corpus.  The clear implication of the complaint is that plaintiff had kept B.D. past the end of the visitation period specified in the then-existing parenting plan while he attempted to negotiate a modification of his

15

visitation or custody rights.  Thus, even construing the facts most favorably to plaintiff, it does not appear that he has even alleged the deprivation of a formally-established visitation right.

Unquestionably, however, even if the father *was* entitled to visitation at the time his son was removed (based on his ¶ 17 allegations concerning an unspecified agreement) the alleged deprivation was not permanent.  Indeed, the complaint alleges that B.D. now resides with plaintiff.  Plainly, this case does not involve any permanent modification of plaintiff's parental right in the care, custody, and management of B.D.  At most, plaintiff has claimed a deprivation of an unspecified amount of informally agreed-to visitation time with his son.

After analyzing the facts of this case using the framework established in *Zakrzewski*, *Wise and* Brittain, the undersigned concludes that plaintiff has not alleged facts that would establish that his right to visitation with his son (if any such right is even involved here) was infringed in a manner that rises to the level of a constitutional violation.  *See Wise*, 666 F.2d  at 1333; *Zakrzewski*, 87 F.3d at 1014; *Brittain,* 451 F.3d at 996.

First, plaintiff has not adequately alleged a substantive due process violation concerning his parenting rights.  Substantive due process protects individuals from arbitrary deprivation of their liberty interests by government action. *See County of Sacramento v. Lewis,* 523 U.S. 833, 845-849, 119 S.Ct. 1708, 140 L.Ed.2d 1043 (1998).  To establish a substantive due process violation, plaintiff must demonstrate that the defendants abused their official power in a manner that shocked the conscience, regardless of whether state-law remedies are available.  *Mertick v. Blalock*, 983 F.2d 1353, 1367-68 (6th Cir. 1993)(such a "claim is directed at official acts which may not occur regardless of the procedural safeguards accompanying them.  The test for substantive due process claims of this type is whether the conduct complained of 'shocks the conscience' of the court.")  Thus, to be sufficient, a complaint must allege facts that, if true,

16

would establish such an abuse of official power that the conscience of the court would be shocked.

Plaintiff has not made such allegations. According to the complaint, the defendants took steps to execute the September 2, 2014 writ of habeas corpus so that B.D. would be returned to his mother. Prosecutors and police officials routinely act to enforce court orders. Without more, such conduct could never be an abuse of official power, let alone con science-shocking. Here, the additional 'fact' plaintiff alleges to buttress his claim is that the Jefferson County Family Court lacked subject matter jurisdiction to issue the writ. He also alleges that defendants were obligated to validate the New York court's jurisdiction before executing the writ. Both of these are legal conclusions, as contended by defendants. These are not 'facts,' and they are not required to be accepted as 'true.' "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft,* 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555) (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation." *Id.*)

Plaintiff responds to the motion to dismiss by arguing that the allegations supporting his lack-of-jurisdiction contention are more than legal conclusions. He argues that he also pleaded the existence of the original Cuyahoga County case that considered the custody of the children; the original parenting determination by that court; and the fact that he has continued to reside in the State of Ohio. However, these facts are not dispositive of the issue of whether the New York court lacked jurisdiction.

17

Indeed, the Ohio Court of Appeals recognized that both New York and Ohio courts have been involved in the allocation of parental rights and responsibilities of the Dorazio children.[5] *See Dorazio v. Dorazio,* 2016-Ohio-713, 2016 Ohio App.LEXIS 810, at *7-9 (8th Dist. App. 2016)  Although this appellate ruling recognized that the Ohio court had had continuing jurisdiction (before deciding Ohio was not the convenient forum), it also recognized that the New York court had also exercised jurisdiction in the  matter, stating: "[T]he Family Court in Jefferson County, New York entered orders [in August 2005] that granted joint custody of the children to the parents, with their primary physical residence to be with Mother [in New York]. Father was awarded visitation with the children.  Both parties participated in the hearing that resulted in the New York court's order." *Id.*  Thus, it is evident that plaintiff previously submitted to the jurisdiction of the Jefferson County Family Court in New York, and that court issued orders directly affecting plaintiff's visitation rights.  Plaintiff's assertion that the New York court obviously lacked jurisdiction when the 2014 habeas writs were issued is a legal conclusion.  This court is not required to accept it as true for purposes of deciding defendants' motion to dismiss.

More fundamentally, the prosecutors and sheriff's department personnel sued in this action were under no duty to take either Dorazio or his attorney's word on the jurisdictional issue.  Nor were they required independently to research and determine whether the Jefferson County Family Court had jurisdiction.  As the Ninth Circuit aptly stated in *Brittain:*

> We do not require police officers to act as legal experts to avoid violating the Constitution; substantive due process secures individuals from "arbitrary" government action that rises to the level of "egregious conduct," not from reasonable, though possibly erroneous, legal interpretation.

---

[5] As noted above, in addition to the factual allegations asserted in the complaint, this court is permitted to consider public records in the context of a Civil Rule 12(B)(6) motion to dismiss.  *Whittiker v. Deutsche Bank Nat'l Trust Co.,* 605 F.Supp.2d 914, 924-925 (N.D. Ohio 2009).

*Brittain,* 451 F.2d at 996.  The undersigned finds persuasive the reasoning in *Brittain.*  As will be

addressed further below, police and prosecutors who merely enforce facially valid court orders

dealing with child custody or visitation are not engaged in conscience-shocking activity, as a

matter of law.  *Id.* at 998.  Plaintiff has not identified any case in which such an official  has

been found subject to a substantive due process claim under § 1983.

Notably absent from the complaint and plaintiff's (and defendants') briefing is a copy of

the September 2, 2014 writ of habeas corpus.  This is significant because Ohio law requires the

face of an out-of-state court order to have certain language in order to be enforced in Ohio.

Section 311.07, Ohio Rev. Code, provides:

> (A) . . . The sheriff shall, except as provided in division (C) of this section,
> execute all warrants, writs, and other process directed to the sheriff by any proper
> and lawful authority of this state, and those issued by a proper and lawful
> authority of any other state.

> (C) The sheriff <u>shall not execute</u> process that is issued in a state other than this
> state, unless the process contains either of the following:

> (1) <u>A certification by the judge of the court that issued the process stating that the
> issuing court has jurisdiction to issue the process</u> and that the documents being
> forwarded conform to the laws of the state in which the court is located

> (D) As used in this section and section 311.08 of the Revised Code, "proper and
> lawful authority" means any authority authorized by law to issue any process and
> "process" means those documents issued in this state in accordance with section
> 7.01 of the Revised Code and those documents, other than executions of
> judgments or decrees, issued in a state other than this state that conform to the
> laws of the state of issuance governing the issuance of process in that state.
> [Emphasis added]

This standard precluded the defendants from enforcing the writ of habeas corpus unless it

bore a certification of the Jefferson County Family Court judge stating that the court had

jurisdiction to issue the writ and that the document conformed to the law of New York.  Plaintiff

has not alleged that the September 2, 2014 writ did not contain the required certification.  This

court cannot simply presume the writ didn't contain the required certification. Instead, the opposite is true because a strong presumption of reliability is accorded to judicial proceedings. *Cf. Strickland v. Washington*, 466 U.S. 668, 696, 104 S.Ct. 2052, 80 L.Ed2d 674 (1984). Thus, absent evidence that the writ was facially invalid, the court must presume that it contained the required certification. An order bearing such a certification would be facially valid. This is obviously important. Prosecutor and law enforcement officials are entitled to act on facially valid court orders. And plaintiff has identified no legal principle suggesting such officials are under a burden to investigate whether the certification itself is valid.

Plaintiff has asserted the legal conclusion that defendants failed to follow Ohio law "to ensure that the writ of habeas corpus was issued by 'a proper and lawful authority of any other state.'" ECF Doc. No. 13, Page ID# 72. But the complaint never alleges that the New York court was not authorized by law to issue writs of habeas corpus.[6] Instead, plaintiff has merely alleged the additional legal conclusion that the Jefferson County Family Court lacked subject matter jurisdiction, an allegation contrary to the certification language presumptively on the writ.

None of plaintiff's allegations concerning defendants' acts shock the conscience of this court, and no abuse of power has even been alleged. Under the circumstances, the conclusion that plaintiff has failed to state a violation of his substantive due process rights is inescapable. The undersigned recommends dismissal of each of plaintiff's claims on that ground.

Plaintiff has also failed to allege a procedural due process violation. The complaint does not allege that defendants should have provided him with some pre-deprivation process before removing B.D. or post-deprivation process after having done so. Even if he had, such allegations would be insufficient to establish the necessary deprivation to sustain a § 1983 action.

---

[6] In fact, as noted above, plaintiff has appeared before and had his child visitation and/or custody rights determined by that court. Any contention of a lack of jurisdictional authority of that court to determine custody and visitation matters is negated by plaintiff's acceptance of the 2004 proceedings.

The undersigned finds the detailed discussion of this subject in *Brittain* to be persuasive. As in *Brittain,* plaintiff has not alleged the absence or insufficiency of post-deprivation proceedings.  Indeed, it is evident not only that post-deprivation process was available to plaintiff but also that he has taken advantage of it to secure the current custody of B.D.  *See Dorazio,* 2016-Ohio-713 at ¶¶ 25-30 and ¶ 13 of plaintiff's complaint.  Had plaintiff asserted a procedural due process violation, the court would have been required to balance the liberty interests of plaintiff, his former wife and B.D. to determine whether any sort of hearing was required.  Because plaintiff has not claimed his procedural due process rights were violated, the court is not required to conduct this balancing of interests.

Even if an analysis of plaintiff's procedural due process rights were required, the undersigned could not, on the facts alleged, find any procedural due process violation.  If a pre-deprivation hearing before any coerced transfer of a child were required as a matter of law, parents holding children over beyond an established visitation period would enjoy continued visitation on a self-help basis until the matter could be adjudicated. The potential loss faced by the other parent would not be insignificant.  That is particularly true where, as here, the mother ostensibly had been without her child for the entire summer and likely was attempting to deal with school re-enrollment issues.

The undersigned agrees with the *Brittain* analysis through which the Ninth Circuit concluded that there is no overwhelming liberty interest in a single week of visitation time.  451 F.3d at 1001. The liberty interest here is even more minimal.  It does not appear that any deprivation of formal visitation time is involved.  Instead, plaintiff seems to be claiming a loss of an unspecified amount of informally agreed to visitation or custody time.  If courts are loathe to afford pre-deprivation procedural due process safeguards when state officials enforce court-

ordered child custody and visitation rights, the incentive to require pre-deprivation hearings before informal arrangements are abridged is even less.  Moreover, as pointed out in *Brittain* plaintiff's real argument is not that he was entitled to some generic amount of visitation time; instead, he argues that he was entitled to the specific time after B.D. was removed from his custody.  Because the state courts could provide makeup time or other relief – as they did here – plaintiff's liberty interest arising from the loss of particular days or weeks is limited at best.  And nothing about that loss suggests a pre-deprivation hearing of some sort was necessary to protect that interest.  Furthermore, as pointed out in *Brittain,* the deprivation of visitation rights and the procedures required to effect any change in visitation rights are matters typically reserved to state courts.  *Brittain*, 451 F.3d at 1001-1002.  This cannot be the basis of a § 1983 action.

The complaint allegations, coupled with public records related to this matter, reveal that plaintiff's right to visitation with B.D. during the period after the child was returned to his mother (if any such right is even involved here) was not infringed in a manner that rose to the level of a constitutional violation.  Because plaintiff has failed to allege facts that, if true, would establish that he has been deprived of a right secured by the Constitution or laws of the United States, his § 1983 action fails as a matter of law.

Defendants dedicate several pages of their reply brief to the possibility that plaintiff has attempted to assert a *Monell* [7] claim in Counts III and IV of his complaint.  Defendants then argue that plaintiff has failed to establish a *Monell* claim because he has failed to state an underlying constitutional deprivation committed by defendants.  Although the undersigned has found above that plaintiff has failed to allege facts which would establish an underlying

---

[7] In *Monell v. Dept. of Soc. Sec.* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) the U.S. Supreme Court determined that municipalities could be held liable under § 1983 when execution of a government policy inflicted injury.  In *Monell*, the municipality was compelling pregnant employees to take unpaid leaves of absence before such leaves were required for medical reasons.

constitutional violation, the court finds that the *Monell* precedent cited by defendants is inapplicable to the facts alleged in plaintiff's complaint.  Moreover, nothing in plaintiff's opposition brief argues that he had attempted to state a *Monell* claim in this action.  Thus, no further comment on the issue is required.

**B.    Immunity**

Because plaintiff has failed to allege facts that would establish he has been deprived of a right secured by the Constitution and laws of the United States, his complaint should be dismissed.  Defendants also argue that they are entitled to a dismissal of plaintiff's claims on the grounds that they are immune from liability. The Supreme Court has repeatedly stressed the importance of resolving immunity questions at the earliest possible stage in litigation.  *Pearson,* 555 U.S. at 232 (citing *Hunter v. Bryant,* 502 U.S. 224, 227, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991)).  Defendants Coulson and Germano argue that they are entitled to absolute prosecutorial immunity; all four defendants contend that they are entitled to absolute quasi-judicial immunity and qualified immunity.

The Supreme Court has endorsed a "functional" approach to questions concerning the application of common-law tort immunities to individuals in § 1983 actions: "[I]mmunity is justified and defined by the functions it protects and serves, not by the person to whom it attaches." *Forrester v. White*, 484 U.S. 219, 108 S.Ct. 538, 542, 544, 98 L.Ed.2d 555 (1988). The extent of government officials' immunity depends upon the likely effect their exposure to liability will have on the operation of effective government in a particular context, balanced against the potential for a deprivation of individual rights in that context. E.g., *Doe v. McMillan*, 412 U.S. 306, 320, 93 S.Ct. 2018, 36 L.Ed.2d 912 (1973); *Chavez v. Singer*, 698 F.2d 420, 422 (10th Cir.1983).

Courts have long recognized that a litigant dissatisfied with the outcome of judicial proceedings will oftentimes accuse his "adversaries" of constitutional infirmities. See, e.g., *Bradley v. Fisher*, 80 U.S. (13 Wall.) 335, 348, 20 L.Ed. 646 (1871). Because "'controversies sufficiently intense to erupt in litigation are not easily capped by a judicial decree' ... the common law provided absolute immunity from subsequent damages liability for all persons— governmental or otherwise—who were integral parts of the judicial process." *Briscoe v. LaHue*, 460 U.S. 325, 335, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983) (quoting *Butz v. Economou*, 438 U.S. 478, 512, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978)). Accordingly, the Supreme Court has recognized not only the absolute civil immunity of judges for conduct within their judicial domain, *Pierson v. Ray*, 386 U.S. 547, 554–55, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967), but also the "quasi-judicial" civil immunity of prosecutors, *Imbler v. Pachtman*, 424 U.S. 409, 430–31, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976), grand jurors, id. at 423 n. 20, 96 S.Ct. at 991, witnesses, *Briscoe*, 460 U.S. at 345–46, 103 S.Ct. at 1120–21; and agency officials, *Butz*, 438 U.S. at 512–13, 98 S.Ct. at 2913–14, for acts intertwined with the judicial process.

Recognizing that the power to execute judicial decrees is no less an important and integral part of the judicial process than the roles of those officials previously afforded absolute immunity, the Tenth Circuit held in *T & W Inv. Co., Inc. v. Kurtz*, 588 F.2d 801, 802–03 (10th Cir.1978), that a receiver named as a defendant in a corporation's civil rights action was a court officer who shared the judge's immunity to the extent he carried out the orders of his appointing judge. There is virtual unanimity among the Circuits that officials sworn to execute court orders are shielded by absolute immunity in the performance of their duty. See e.g., *Coverdell v. Department of Social and Health Serv.*, 834 F.2d 758, 764–65 (9th Cir.1987) (social worker accorded absolute quasi-judicial immunity from suit arising out of worker's apprehension of

24

child pursuant to court order); *Henry v. Farmer City State Bank*, 808 F.2d 1228, 1238–39 (7th Cir.1986) (sheriff acting pursuant to court order directing enforcement of judgment entitled to absolute immunity for allegedly wrongful conduct); *Property Management & Invs., Inc. v. Lewis*, 752 F.2d 599, 602–04 (11th Cir.1985) (receiver of corporation protected by judicial immunity in carrying out orders of appointing judge); *Tymiak v. Omodt*, 676 F.2d 306, 308 (8th Cir.1982) (sheriff who evicted plaintiff from home in compliance with court order was absolutely immune from suit for damages); *Tarter v. Hury*, 646 F.2d 1010, 1013 (5th Cir.1981) (court clerks have absolute immunity in actions for damages based upon ministerial conduct required by court order); *Slotnick v. Garfinkle*, 632 F.2d 163, 166 (1st Cir.1980) (court clerk and state hospital superintendent acting at behest of judge enjoyed judicial immunity); *Waits v. McGowan*, 516 F.2d 203, 206 & n. 6 (3rd Cir.1975) (judicial immunity extends to police officers engaged in ministerial functions under court's direction); *Fowler v. Alexander*, 478 F.2d 694, 696 (4th Cir.1973) (sheriff and jailer who confined plaintiff in executing a court order were absolutely immune from suit); *Bradford Audio Corp. v. Pious*, 392 F.2d 67, 72–73 (2nd Cir.1968) (court- appointed receiver enforcing explicit order of court was immune from liability).

Enforcing a court order or judgment is intrinsically associated with a judicial proceeding. *Henry*, 808 F.2d at 1239.  If losing parties were free to challenge the will of the court by threatening its officers with harassing litigation, the officers might neglect the execution of their sworn duties. As the Ninth Circuit aptly reasoned: "The fearless and unhesitating execution of court orders is essential if the court's authority and ability to function are to remain uncompromised." *Coverdell*, 834 F.2d at 765.  Absolute immunity for officials assigned to carry out a judge's orders is necessary to insure that such officials can perform their function without

the need to secure permanent legal counsel. A lesser degree of immunity could impair the judicial process.

### 1.    Prosecutorial Immunity

Absolute prosecutorial immunity protects a prosecutor from civil liability arising from the duties of the prosecutor acting as an advocate for the government. *Imbler v. Pachtman,* 424 U.S. 409, 430-431, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976).  Plaintiff contends that Defendants Coulson and Germano are not entitled to prosecutorial immunity because they were not acting in a case being, or about to be, prosecuted.  Plaintiff cites *Burns v. Reed,* 500 U.S. 478 (1991) for the proposition that a prosecutor is not entitled to absolute immunity when giving legal advice to police officers prior to the commencement of a case against a defendant.  Plaintiff argues that Prosecutors Coulson and Germano were not acting in a pending case and thus, their conduct cannot be construed to be the function of a prosecutor.

Defendants argue that they acted to permit the execution of a court order.  Defendant Germano argues that her conduct was authorized by Ohio Rev. Code §§ 3127.45 and 3127.46 which permits a prosecutor to take any lawful action to locate a child, obtain the return of a child or enforce a child custody determination.  Defendant Coulson also argues that he is immune from liability here for his role in enforcing Ohio's Uniform Child Custody Jurisdiction and Enforcement Act.

The undersigned agrees that Defendants Germano and Coulson are entitled to absolute prosecutorial immunity. Contrary to plaintiff's argument, the Jefferson County Family Court issued a writ of habeas corpus that presumably bore a certification that it was rendered by a court of competent jurisdiction.  That court had previously (with plaintiff's participation) issued orders related to the custody and visitation rights of plaintiff.  This is not a case in which the

26

prosecutors investigated claims against plaintiff or merely gave legal advice.  Rather, they acted to enforce a court order pursuant to statutory authority.  As explained above, plaintiff has not attempted to show that the Jefferson County Family Court lacked the authority to issue writs of habeas corpus.  And plaintiff's contention that the New York court lacked subject matter jurisdiction is a legal conclusion that is not required to be accepted as true.   Plaintiff offers nothing more in support his claims. Furthermore, Defendants Germano and Coulson acted under the authority granted by O.R.C. §3127.45 in effecting the return of a child.  They are  absolutely immune from liability on plaintiff's claims.

### 2.     Absolute Quasi-Judicial Immunity

Judges are absolutely immune from suits for money damages for all actions taken in their judicial capacity, unless these actions are taken in complete absence of any jurisdiction.  *Stump v. Sparkman,* 435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978); *Bush v. Rauch,* 38 F.3d 842 (6th Cir. 2007); *Bright v. Gallia County, Ohio,* 753 F.3d 639, 652 (6th Cir. 2014).  As the Supreme Court ruled in *Stump*:

> [T]he necessary inquiry in determining whether a defendant judge is immune from suit is whether at the time he took the challenged action he had jurisdiction over the subject matter before him. Because "some of the most difficult and embarrassing questions which a judicial officer is called upon to consider and determine relate to his jurisdiction . . . ," [*Bradley v. Fisher*, 13 Wall. 335, 352, 20 L.Ed. 646 (1872)] the scope of the judge's jurisdiction must be construed broadly where the issue is the immunity of the judge. A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the "clear absence of all jurisdiction." 13 Wall., at 351.

435 U.S. At 356-357.  In *Stump* the Supreme Court concluded that a judge is absolutely immune from liability for judicial acts even when the judge commits "grave procedural errors." *Id.* at 359. *Stump* relied on the final conclusion in *Bradley*, 13 Wall., at 357, where it stated: "[T]his erroneous manner in which [the court's] jurisdiction was exercised, however it may have affected

the validity of the act, did not make the act any less a judicial act; nor did it render the defendant liable to answer in damages for it at the suit of the plaintiff, as though the court had proceeded without having any jurisdiction whatever . . . ." *Id.*

Here, plaintiff asserts that the Jefferson County Family Court had no subject matter jurisdiction over his case because the Ohio Court of Common Pleas had continuing exclusive jurisdiction at the time the September 2, 2014 habeas corpus writ was issued.  Even if that was true, at most, the Jefferson County Court made an erroneous conclusion of its right to act under the terms of the New York version of the Uniform Child Custody Jurisdiction and Enforcement Act.  Plaintiff has not contended, and given his past participation in proceedings in Jefferson County Family Court, he cannot contend that that court was not authorized to act at all in child custody matters.  Because of this, plaintiff cannot under any set of factual allegations succeed on a claim premised on a conclusion that the New York court acted in absence of all jurisdiction.

As set forth above, absolute quasi-judicial immunity has been extended to officials who execute facially valid court orders.  *Blackwell v. Wenninger,* 2010 U.S. Dist. LEXIS 22241 (S.D. Ohio Feb. 18, 2010).  Plaintiff argues that because the New York judge did not have immunity, the defendants enforcing his order also do not have immunity from plaintiff's claims.  Given the foregoing discussion, however, this argument fails.  The New York judge did not act in the complete absence of jurisdiction.  As such, he is entitled to absolute immunity.  The facts of this case indicate that both the prosecutors and law enforcement officers executed a facially valid writ of habeas corpus and that they were authorized to do so by statute.  As a result, the immunity to which the judge was entitled is imputed to them under the principle of quasi-judicial

28

immunity.  For these reasons, the court finds defendants' absolute quasi-judicial immunity argument to be well taken.[8]

### 3.    Qualified Immunity

Finally, defendants argue that they are entitled to qualified immunity.  A public official performing a discretionary function enjoys qualified immunity in a civil action for damages, provided his or her conduct does not violate clearly established federal statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald,* 457 U.S. 800, 818 102. S.Ct. 2727, 73 L.Ed.2d 396 (1982).  The immunity is "immunity from suit rather than a mere defense to liability." *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985).  Defendants argue that plaintiff has failed to articulate any unconstitutional act committed by any defendant to this lawsuit and that they are entitled to qualified immunity.

Plaintiff's response to the qualified immunity issue relies on the same factual and legal assertions he makes in response to the other issues addressed above. As has been thoroughly discussed, the undersigned finds that plaintiff has failed to allege facts sufficient to support a deprivation of his rights under the Constitution or laws of the United States.  Thus, for these same reasons defendants are entitled to a qualified immunity.

Analyzing plaintiff's factual and legal assertions under the principles discussed above leads to the inescapable conclusion that defendants are absolutely and qualifiedly immune from liability for plaintiff's claims. For these reasons, the undersigned recommends that plaintiff's complaint be dismissed.

---

[8] Plaintiff also argues that it was improper to execute the September 2, 2014 writ in Ohio because it was not registered in Lake County pursuant to Ohio Rev. Code § 3127.35.  As pointed out be defendants, however, that statute permits but does not mandate that out-of-state custody and visitation orders be registered before being enforced.  Ohio Rev. Code  §§ 3127.45 and 3127.46 authorize the prosecutor to take any lawful action to locate a child and/or obtain the return of a child.

### C.       Statute of Limitations

Defendants also contend that plaintiff's claims may be barred by the applicable statute of limitations.  Defendants assert that plaintiff has failed to allege relevant dates in relation to the conduct of Prosecutors Coulson and Germano.  Although the court recognizes that § 1983 claims are subject to a two-year statute of limitations, See *Browning v. Pendelton,* 869 F.2d 989 (6th Cir. 1989), it is unclear from the complaint that any of plaintiff's claims would necessarily be barred by this statute.  Thus, the undersigned agrees with plaintiff that the statute of limitations issue normally would be better considered at a later time in the litigation.  However, because plaintiff has failed to state a valid § 1983 claim and because the defendants are immune from his attempted claims, it is unnecessary to further consider the statute of limitations argument.

## VI.     Conclusion

The undersigned recommends that the court DISMISS plaintiff's complaint for failure to state a claim upon which relief may be granted, pursuant to Fed. R. Civ. P. 12(b)(6), and because defendants are immune from liability for the claims plaintiff has attempted to assert.

Dated: January 30, 2017

Thomas M. Parker
United States Magistrate Judge

---

### OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of the Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  See *U.S. v. Walters*, 638 F.2d 947 (6th Cir. 1981).  See also *Thomas v. Arn,* 474 U.S. 140 (1985), reh'g denied, 474 U.S. 1111 (1986).**

---